### UNITED STATES of America

v.

### Regina WALSH, Defendant.

### No. 11 Cr. 1091(VM).

United States District Court, S.D. New York.

Aug. 6, 2012.

---

E. Danya Perry, United States Attorney, Daniel Ben Tehrani, Justin S. Weddle, U.S. Attorney's Office, New York, NY, for Plaintiff.

Paul Barry Bergman, Paul B. Bergman, P.C., New York, NY, for Defendant.

### DECISION AND ORDER

VICTOR MARRERO, District Judge.

Defendant Regina Walsh ("Walsh") seeks an order from the Court directing the Government to disclose to her certain documents and information relating to the jury selection procedure the prosecutors followed to empanel the grand jury that returned the indictment in this case. By this application, Walsh seeks to assess the potential viability of a motion pursuant to Rule 12(b)(3) of the Federal Rules of Criminal Procedure ("Rule 12(b)(3)") and 28 U.S.C. § 1867(a) ("§ 1867(a)").

For the reasons set forth below, Walsh's application is DENIED.

### I.  BACKGROUND

Walsh filed the instant application requesting access to jury selection docu-

ments that would enable her to evaluate the effect of the provision, set forth in the Southern District of New York's Amended Plan for the Random Selection of Grand and Petit Jurors ("SDNY Amended Jury Plan"), permitting persons over seventy years of age to opt out of grand jury service,[1] Walsh believes that the seventy-plus age group was under-represented in the venire from which the grand jury that returned the indictment in this case was selected. If her concerns are well-founded, Walsh would subsequently file a motion for either a stay of proceedings or a dismissal of the indictment pursuant to Rule 12(b)(3) and § 1867(a). In that motion, Walsh hopes to argue that this under-representation constituted a violation of the fair cross-section-requirement prescribed by the Sixth Amendment of the United States Constitution. U.S. Const. amend. VI.

The SDNY Amended Jury Plan involves a multi-step procedure for (1) randomly generating Master Jury Wheels from registered voter lists; (2) drawing Qualified Jury Wheels from the Master Jury Wheels by use of a qualification questionnaire; and (3) summoning individuals from the Qualified Jury Wheel to comprise the grand or petit jury venire. *See* SDNY Amended Jury Plan, Arts. III and IV. At the second step, several categories of persons are excused or deferred. from jury service upon individual request. *See id.,* Art. VI. Persons over the age of seventy may opt out of jury service upon request. *See id.* The rationale underlying such a voluntary opt-out provision is a presumption that, as it affects a portion of the public, "jury service by persons [over the age of seventy] would entail undue hard-

ship or extreme inconvenience to them . . . ." *Id.*

## II. DISCUSSION

### A. THE FAIR CROSS SECTION JURY REQUIREMENT

There are both constitutional and statutory bases for a jury composed of a fair cross section of citizens in the judicial district. The Constitution's Sixth Amendment guarantees criminal defendants "an impartial jury of the State and district." U.S. Const. amend. VI; *see also Taylor v. Louisiana,* 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975) (holding selection of petit juries from representative cross section of community to be essential component of Sixth Amendment right to jury trial). Although the Sixth Amendment's representative cross-section requirement expressly applies only to petit juries, the Jury Selection and Service Act of 1968, 28 U.S.C. §§ 1861–1878 ("Jury Selection Act"), grants litigants the right to both grand and petit juries that are "selected at random from a fair cross section of the community in the district or division wherein the court convenes." 28 U.S.C. § 1861. Parties alleging a violation of the Jury Selection Act are "allowed to inspect, reproduce, and copy" papers used by the jury commission or clerk in connection with the jury selection process "at all reasonable times during the preparation and pendency of such a motion." 28 U.S.C. § 1867(f).

In *Duren v. Missouri,* 439 U.S. 357, 99 S.Ct. 664, 58 L.Ed.2d 579 (1979), the Supreme Court applied this fair-cross-section requirement to a jury selection plan in Missouri that allowed women to voluntarily opt out of jury service, which

---

1. The SDNY Amended Jury Plan is available at: http://www.nysd.uscourts.gov/jury_ handbook/juryplan_feb_2009.pdf

resulted in women constituting about 15 percent of the venire, a "gross discrepancy" from the 54 percent who lived in the community. *Id.* at 365–66, 99 S.Ct. 664. The Supreme Court held that this opt-out provision violated the fair-cross-section requirement. More importantly, *Duren* established the elements of a prima facie case of a violation of the fair-cross-section requirement. Under *Duren*'s test, a defendant must show "(1) that the group alleged to be excluded is a 'distinctive' group in the community; (2) that the representation of this group in venires from which juries are selected is not fair and reasonable in relation to the number of such persons in the community; and (3) that this underrepresentation is due to systematic exclusion of the group in the jury selection process." *Id.* at 364, 99 S.Ct. 664. Once a prima facie case is successfully made, "[t]he right to a proper jury cannot be overcome on merely rational grounds," and any exemption criteria must instead be supported by a "significant state interest." *Id.* at 367, 99 S.Ct. 664.

## B.  *ACCESS TO JURY SELECTION INFORMATION*

■ Walsh contends that the information she seeks to obtain from the Jury Clerk will enable her to meet the second prong of the *Duren* test in a § 1867(a) motion alleging failure to satisfy the fair-cross-section requirement. The Government opposes Walsh's application, arguing that the Sixth Amendment does not compel the relief Walsh seeks.

The Court agrees with the Government that furnishing Walsh with jury selection information in this case is unwarranted. Disclosure of such jury selection information will both unnecessarily delay the resolution of this case and constitute a waste of time and resources for the parties involved. Walsh will be unable to prove a violation of the fair-cross-section requirement even if the Court assumed, for the sake of argument, that she could satisfy the second prong of the *Duren* test. The jury selection information might very well show that the representation of persons aged over seventy in the venire which produced the grand jury in this case is not "fair and reasonable in relation to the number of such persons in the community." 439 U.S. at 367, 99 S.Ct. 664. Nevertheless, a § 1867(a) motion by Walsh will necessarily fail to satisfy the first prong of the *Duren* test, which requires "that the group alleged to be excluded [be] a 'distinctive' group in the community," rendering the present motion to obtain jury selection information unnecessary. *Id.* at 364, 99 S.Ct. 664.

The Court of Appeals for the Second Circuit has not considered the implications of permitting persons aged over seventy to opt out of jury service. However, the Seventh Circuit has held that such persons do not constitute a cognizable "distinctive" group for purposes of the fair cross-section-requirement. *See Silagy v. Peters,* 905 F.2d 986, 1010 (7th Cir.1990). In *Silagy,* the official responsible for compiling the venire exempted persons aged seventy or older from jury service without any official authorization; nevertheless, the Seventh Circuit found that the fair-cross-section requirement was not violated. *See id.* at 1010.

The reasoning in *Silagy* is persuasive and equally applicable here. First, there is no basis to hold that any "unique perspective" of older Americans will not be adequately represented by persons included in the venire, particularly those aged sixty and above. *Id.* at 1011. Under the SDNY Amended Jury Plan, moreover, it can reasonably be expected that at least some people older than seventy will not

opt out of jury service. Second, even a complete exemption of persons aged over seventy does not "substantially jeopardize" public perception of the criminal justice system. *Id.* It is reasonable to presume that members of the public understand and accept as rational the obvious practical considerations upon which the seventy-plus opt-out provision is grounded. For some members of that group, requiring jury service, even an initial appearance to seek to be excused, would disproportionately pose inconveniences and hardships.

Third, the opt-out provision does not hinder the ultimate purpose of the fair-cross-section requirement, which is "to ensure that each criminal defendant be afforded his Sixth Amendment right to an 'impartial jury'." *Id.* (quoting *Taylor*, 419 U.S. at 530, 95 S.Ct. 692). Finally, it would be an over-generalization to assume that people over the age of seventy hold some type of shared opinion or experience that will be lost to the justice system if they are permitted to opt-out of jury service. To the contrary, within any age group "there will be vast variations in attitudes, viewpoints, and experiences." *U.S. v. Guzman*, 337 F.Supp. 140, 146 (S.D.N.Y.1972), *aff'd* 468 F.2d 1245 (2d Cir.1972) (holding that exclusion of 18- to 24-year-olds did not exclude "distinctive" group for purposes of jury selection since views, attitudes, or experiences of these young people do not differ in any appreciable way from those a few years older).

Moreover, the SDNY Amended Jury Plan is even more benign than the practice upheld in *Silagy* because it (a) has been formally authorized by the Judges of the Court, following an official rule-making procedure, and (b) is less exclusionary given that the seventy-plus age group is only permitted to opt out of jury service, and not automatically excluded by action taken solely by the Court's clerk.

Accordingly, the Court finds that the relief Walsh seeks is unnecessary. Even if jury selection data did ultimately reveal that the SDNY Amended Jury Plan excluded all persons aged over seventy from the grand jury that returned the indictment in this case, Walsh would still be unable to establish a violation of the fair-cross-section requirement provided for in the Sixth Amendment and the Jury Selection Act.

## III. *ORDER*

For the reasons stated above, it is hereby

**ORDERED** that the application of defendant Regina Walsh for access to certain documents relating to the jury selection procedures followed by the Government in this case (Docket No. 82) is DENIED.

**SO ORDERED.**